RECEIVED
IN ALEXANDRIA, LA
JUL -8 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| TAMMY GEORGE | DOCKET NO. 04-CV-1776 |
|---|---|
| VERSUS | JUDGE DRELL |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This case comes before the Court for a review of the final decision of the Commissioner of Social Security ("Commissioner"), denying TAMMY GEORGE Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). 42 U.S.C. § 416(i), 423(d). The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that George is not disabled and thus not entitled to disability insurance benefits.

George was born in 1964 (Tr. 200), has a high school education (Tr. 201), and has past work experience as a receptionist (Tr. 78). She initially filed an application for DIB on August 21, 2000, alleging an onset date of February 28, 2000. The claim was denied initially and by administrative decision on March 7, 2002. (Tr. 17, 32-37.) George failed to exhaust further administrative remedies. George then protectively filed an application for DIB on June 26, 2002, due to neck and back problems and headaches. The claim was denied initially, and a request for hearing was timely filed. A hearing was held on May 7, 2003, at which George, who was

5

represented by counsel, appeared and testified. The ALJ issued a decision unfavorable to the claimant on August 19, 2003, and George filed a request for review with the Appeals Council. The Appeals Council denied review, and the decision of the ALJ became the final decision of the Commissioner.

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th C. 1999). For the evidence to be

substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical

evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

George raises the following issues for review:

(1) Whether the ALJ erred as a matter of law in failing to obtain medical expert testimony, as mandated by Social Security Ruling 96-6p, in determining the issue of medical equivalence;

(2) Whether the ALJ erred in failing to adhere to the provisions of Section 404.1529(a) and Social Security Ruling 96-7p, by failing to articulate appropriate reasons why George's testimony was not credible; and

(3) Whether the ALJ erred in failing to assign controlling weight to the opinion of treating source, Bruce Barton, M.D.

## Factual Background

George completed the twelfth grade and previously worked as a receptionist. (Tr. 78, 201.) George has a history of a microdiscectomy in 1996, a C6-7 anterior cervical discectomy and fusion in 1997 (Tr. 150-152), and an L5-S1 discectomy in 1999. (Tr. 101, 150-53, 163-64.) In February 2000, Dr. G. Andrew Wilson noted post-operative changes at L4-5, mild to moderate left bulge or protrusion at L3-4, and central bulge with some left neural foraminal narrowing suggested at L5-S1. (Tr. 160.) George received epidural steroid injections in May 2000, at which time Dr. Wilson opined that George may benefit from surgical decompression of L3-4. (Tr. 156.) George was advised to contact Dr. Wilson if she wanted to proceed with the surgery.

4

George treated with Dr. Bruce Barton from January 18, 2000, through March 1, 2001. (Tr. 146-147.) George reported back pain to Dr. Barton in January 2000, and a motor vehicle accident in February 2000. George was referred to Dr. Wilson. (Tr. 147.) Dr. Barton prescribed Valium in May 2000, without noting an indication as to why the medication was prescribed or what George's symptoms were on that date. (Tr. 147.) George complained of a ruptured disc on August 11, 2000 and December 20, 2000, and Dr. Barton prescribed Darvocet without conducting diagnostic testing or examination or reviewing any objective medical findings. (Tr. 147.) On March 1, 2001, George complained to Dr. Barton that she had trouble sleeping, so Dr. Barton prescribed Ambien. In April 2001, George requested that Dr. Barton increase her Valium from 5 mg to 10 mg, so Dr. Barton increased the dosage. (Tr. 146.) In June 2001, treatment notes indicate that Dr. Barton prescribed more Darvocet. In July, George complained of a sinus infection. (Tr. 146.) After July 2001, George continued to call Dr. Barton's office to get refills of Darvocet, Valium, and Ambien, which were prescribed until August 2002. (Tr. 144, 145.)

Dr. Robert Po performed an independent orthopedic examination in February 2001, at the request of Disability Determination Services ("DDS"). (Tr. 121-125.) Despite having undergone three prior operations, George complained of neck pain, radiating into the left arm, and back pain, radiating into her legs and feet.

(Tr. 122.) George wore a lumbosacral support, and rated her pain as a 10 on a scale of 1-10. (Tr. 122.) Upon physical examination, Dr. Po noted full range of motion of both elbows, writs, fingers, and thumbs. Dr. Po found some tenderness on the lateral elbow on the left side. The doctor noted spasm on the right side of the lumbar area on palpitation and alternate leg standing. (Tr. 123.) A slight curve to the left was noted at T12, and the right leg was ½ inch shorter than the left. (Tr. 123-24.) Hamstring tightness was noted on both sides, and George reported to Dr. Po that she could not walk on her heels or toes because of back and leg pain. George had a limp on the left side with regular toe-heel gait. (Tr. 124.) She arose from a seated to standing position with moderate difficulty. (Tr. 124.)

Dr. Po noted that George's x-rays revealed a solid fusion at C6-7, with some narrowing at C7-T1. X-ray of the lumbosacral spine revealed a scoliosis convexity to the left, and some osteoarthritic changes. (Tr. 124.) There was some narrowing of L4-5 and L5-S1. (Tr. 124.) Dr. Po opined that George could occasionally lift 25 pounds and could frequently lift 10 pounds, could sit for four hours in an eight hour day, and could stand/walk for four hours in an eight hour day. (Tr. 125.)

A June 2, 2002, office report from Huey P. Long Medical Center states that George no longer had disc herniation or nerve root compression. (Tr. 110.) Radiology reports from May and June 2002

show that George had mild loss of disc height at C5-6 and C6-7 and some post-surgical narrowing of the L4-5 intervertebral disc space and associated calcification of the annulus. (Tr. 111.)

In September 2002, George was treated at Huey P. Long for thyroid and sinus problems. A radiologic report from LSU Medical Center in Shreveport on February 23, 2003, revealed annulus fibrosis at C5-C6 with a radial tear. (Tr. 166.)

George reported to Dr. Mohammad Shbeeb in March 2003, because of a positive ANA (Antinuclear Antibody) test and back pain. (Tr. 172-173.) Dr. Shbeeb noted that George was taking Celebrex and Darvocet on an as-needed basis for treatment. George also reported to Dr. Shbeeb that she walked on a regular basis for exercise. (Tr. 172.) The doctor found that George was in no acute pain or distress. She had decreased range of motion of the cervical and lumbar spine, occasional muscle attachment tender points, and no motor weakness. (Tr. 172.) Dr. Shbeeb's impression was "chronic mechanical back pain," for which the doctor recommended pain management and a regular exercise program, and "positive ANA previously, fatigue," noting that the doctor would check the ANA profile, CBC, chemistry, ESR, CPK, urinalysis, and B12. (Tr. 173.) Dr. Shbeeb did not initiate any new medications. There is no indication that any follow-up tests conducted by Dr. Shbeeb produced abnormal results.

A residual functional capacity assessment was performed on

August 13, 2002. (Tr. 126-133.) The examiner found that George could occasionally lift 10 pounds and could frequently lift less than 10 pounds. (Tr. 127.) It was noted that George could stand and/or walk for at least 2 hours in an 8 hour day, and could sit for about 6 hours in an 8 hour day. (Tr. 127.) The examiner noted that Dr. Po's prior opinion from February 2001 that George could only sit for four hours should not be given controlling weight. (Tr. 132.)

The ALJ found that George had the residual functional capacity to lift and/or carry 10 pounds occasionally, less than 10 pounds frequently, and can stand and/or walk a total of 2 hours and sit a total of 6 hours with normal breaks. (Tr. 28.) Therefore, the ALJ determined that George could perform her past relevant work as a receptionist. (Tr. 28.)

<u>Law and Analysis</u>

Issue No. 1:   <u>Whether the ALJ erred as a matter of law in failing to obtain medical expert testimony, as mandated by Social Security Ruling 96-6p, in determining the issue of medical equivalence</u>

First, George argues that the ALJ erred by failing to obtain medical expert testimony pursuant to Social Security Ruling 96-6p. Specifically, George claims that her medical records establish a convincing factual basis to support a finding of medical equivalency. George argues that an updated consultative opinion should have been obtained because additional medical reports were submitted in the record after the consultative examination in 2001.

Social Security Ruling 96-6p provides that an ALJ and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:

(1) when no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or,

(2) when additional medical evidence is received **that in the opinion of the ALJ or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.**

Here, additional medical evidence was received after the consultative examination was performed. The ALJ, in determining whether George met or medically equaled a listing, reviewed and thoroughly discussed all new evidence submitted by George after Dr. Po's consultative examination. (Tr. 19-24.) The ALJ obviously determined that the more recent medical records would not have changed the opinion of the consultative examiner, Dr. Po. Further, the ALJ specifically noted that George failed to meet all elements of the relevant listed impairment after considering all of George's medical records, including those dated after Dr. Po's evaluation. (Tr. 19.) Obtaining an updated medical opinion was not required in this instance. Thus, the ALJ did not err in failing to obtain medical expert testimony under SSR 96-6p.

Issue No. 2: Whether the ALJ erred in failing to adhere to the provisions of Section 404.1529(a) and Social Security Ruling 96-7p, by failing to articulate appropriate reasons why George's testimony was not credible.

Next, George argues that the ALJ erred in failing to articulate why George's testimony was not credible. In making a residual functional capacity assessment, the ALJ considers whether George's symptoms and limitations can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 404.1529 and SSR 96-7p. (Tr. 20.)

The ALJ noted that George alleged debilitating headaches occurring approximately four times a week to twenty times a month. (Tr. 20.) George claimed that the headaches caused nausea and vomiting. (Tr. 217.) The ALJ noted that George's medical records do not reflect such severe and debilitating headaches. The only reference to headaches in her medical records was when George complained of sinus pressure, headaches, and ears popping in a phone conversation with Dr. Barton's office in January 2003, at which time a Medrol Dose Pack was prescribed. (Tr. 143.)

At the hearing, George testified that she obtained some relief from her headaches from Darvocet and Valium. The record indicates that the last time George was prescribed those medications was July and August 2002. (Tr. 144.) The ALJ reasoned that, if George's headaches and their limiting effects were not severe enough to make

10

regular treatment a priority, then it is difficult to accept that the headaches are so severe as to be incapacitating. (Tr. 20.)

As to George's complaints of neck and back pain, the ALJ discussed at length and in detail George's medical history and treatment from 1996 to the present. (Tr. 19-23.) The ALJ noted that George's "allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests they would not currently prevent work. <u>Vaughan v. Shalala</u>, 58 F.3d 129 (5th Cir. 1995)." (Tr. 23.)

The ALJ determined that George's subjective complaints of pain were not "totally credible" in light of the "few objective findings." (Tr. 23.) The ALJ noted that treating and examining physicians found no abnormal gait or station, and no motor or sensory deficits. (Tr. 23.) Further, no atrophy was found, which the ALJ noted was surprising given George's three years of alleged inactivity. (Tr. 23.) George was never observed to be in distress. (Tr. 23, 142, 169, 172.) The ALJ noted that examinations revealed only decreased range of motion in the cervical and lumbar spine and some tenderness in the lumbar spine, which, while probably causing George some mild discomfort at times, did not amount to totally incapacitating pain. (Tr. 23, 121-25, 168, 169, 170, 172.) George received minimal treatment from May

11

18, 2000, to April 23, 2002, consisting of medication prescribed by Dr. Barton on an infrequent basis as requested by George. (Tr. 23, 145-47.) No medication had been prescribed by Dr. Barton for at least seven months prior to the ALJ's decision. The ALJ noted that, while George attributed lack of treatment to having no insurance and limited financial resources, George is eligible for treatment through the system of charity hospitals operated by the State of Louisiana. (Tr. 23.) In fact, George did seek treatment at Huey P. Long Medical Center on four occasions, but had not sought treatment there over the past ten to eleven months prior to the ALJ's decision. (Tr. 23.) The ALJ concluded that, if George's impairments are not severe enough to make regular treatment a priority, especially since treatment is available, then it is difficult for the ALJ to accept that the pain is severe enough to be disabling. (Tr. 23.)

The ALJ discussed the kinds of medications that George had taken, noting that Darvocet is used to treat mild to moderate pain. (Tr. 24.) Lorcet Plus is for relief of moderate to moderately severe pain, but was prescribed only once. (Tr. 24.) The medications have not been shown to have adverse side affects that would prevent gainful employment. (Tr. 24.)

Next, the ALJ observed that George had not participated in alternative therapies such as pain management. A January 2003 Huey P. Long medical record indicates that George was advised to

participate in a therapy program, but she was discharged due to poor compliance with the program. (Tr. 136.)

The ALJ also considered George's daily activities. George testified in February 2002 that she could do some housework such as making beds and cooking, but her daughter did the rest. (Tr. 24.) On her activities of daily living form, George noted that she could not do much during the day, could not prepare her own meals, or do household chores. (Tr. 86-89.) She also wrote that she could walk for a few minutes before having to stop and rest. (Tr. 92.) The ALJ noted that, at the time George completed that activities of daily living form, she was actually working two days a week. (Tr. 25.) Furthermore, George told Dr. Shbeeb that she walked for exercise on a regular basis. (Tr. 25, 172.)

The ALJ is entitled to determine credibility and weigh testimony. See Atkins v. Barnhart, 119 Fed. Appx. 672, 674 (5th Cir. 2005)[1], citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ's credibility determination is entitled to great deference. See id., citing Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000). Here, after providing thorough and detailed reasons, the ALJ concluded that George's reportedly limited daily activities and complaints of pain were outweighed by other factors discussed herein. (Tr. 25.) The ALJ gave a number of reasons why he did not find George's testimony to be wholly credible. (Tr. 18-25.) An

---

[1] Unpublished opinion.

13

ALJ is required to make affirmative findings regarding a claimant's subjective complaints, see Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994), and in this case, the ALJ clearly fulfilled that obligation. In light of the ALJ's discretion, this contention has no merit.

Issue No. 3:   Whether the ALJ erred in failing to assign controlling weight to the opinion of treating source, Bruce Barton, M.D.

Finally, George argues that the ALJ erred in failing to assign controlling weight to the opinion of Dr. Barton. While Dr. Barton's treatment notes are sparse, he wrote a letter to the Plaintiff's attorney on April 7, 2003, stating that he thought George could work six to eight hours on some days, but that she is not reliable enough to handle more than occasional work. (Tr. 179.) Dr. Barton stated that a full time job was probably "out of the question." (Tr. 179.) While Dr. Barton offered this opinion based on his treatment of George, he also noted, "This lady periodically sees me for medications. She does not come to me for office visits, I believe, due to lack of finance." (Tr. 179.) The ALJ noted that he considered, but was not persuaded by, Dr. Barton's opinion.

Social Security Ruling 96-2p directs that a medical opinion provided by a treating physician must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic testing techniques, and it is not

14

inconsistent with substantial medical and non-medical evidence of record. See Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995). It is ultimately the ALJ who has the responsibility for determining a claimant's disability status. See id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The Fifth Circuit has noted that determinations that a claimant is "disabled" or "unable to work" have no special significance and are legal conclusions reserved to the Commissioner. See Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003).

Here, Dr. Barton admits that he has been contacted periodically by George for medication refills, but that he does not see her for office visits, (Tr. 179), and his records accurately reflect that statement. Dr. Barton's treatment notes, which document George's complaints more by history than physical examination, were considered by the ALJ, as was Dr. Barton's opinion. However, the doctor's opinion that George was unable to perform a full time job is a legal conclusion reserved to the Commissioner; it is not a medical opinion. The doctor did not refer to any findings, clinical observations, examination notes, test results, or any documentation to support his opinion or objectively measure George's ability to perform any type of work.

George complains that, rather than discredit Dr. Barton's opinion, the ALJ should have obtained clarification from Dr. Barton. The regulations provide that a treating physician will be

recontacted when the evidence received is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). Here, George had numerous medical records providing substantial evidence to support the ALJ's decision that George's impairments were not as severe as alleged by Dr. Barton. Thus, the ALJ did not need to see additional evidence or clarification from that doctor.

I find that there is substantial evidence in the record to support the Commissioner's decision that George could perform her previous work as a receptionist, and that the Commissioner's decision is consistent with relevant legal standards.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that George's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of _____, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE